# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**GEORGE H. PALTAN,**

> **Plaintiff,**

**-vs-**
                                                    **Case No.  6:07-cv-932-Orl-19DAB**

**COMMISSIONER OF SOCIAL
SECURITY,**

> **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's denial of Plaintiff's applications for a period of disability and disability insurance benefits and for supplemental security income.  For the reasons set forth herein, the decision of the Commissioner is **REVERSED and the matter is REMANDED** for additional findings.

### PROCEDURAL HISTORY

Plaintiff protectively filed his applications on December 31, 2003, alleging disability commencing on February 1, 1996 (R. 48-53, 236-68).  The claim was denied initially and upon reconsideration, and Plaintiff requested and received a hearing before an Administrative Law Judge (herein "the ALJ") (R. 36, 40-41, 44-45, 369-293).  The ALJ issued an unfavorable decision on February 23, 2007 (R. 9-18).  Plaintiff requested review of the decision, but the Appeals Council denied the request (R. 3-8), making the ALJ's decision the final decision of the Commissioner.  Plaintiff timely sought review in this Court (Doc. No. 1), and the parties have briefed the matter and waived oral argument.

### NATURE OF CLAIMED DISABILITY

Plaintiff claims to be disabled due to fatigue, joint and back pain, residuals from HIV infection, and depression (R. 72, 81, 282-92).

*Summary of Evidence Before the ALJ*

Plaintiff was born on November 15, 1957 (R. 48), making him 46 years old at the time of his application for benefits, and 49 years old when the ALJ rendered his decision. He completed a vocational and technical high school program in 1976, and had past relevant work experience as a commercial painter from 1989 through 1996 (R. 73, 78, 276). He is insured for benefits only through December 1996 (R. 59).[1]

The medical evidence before the ALJ included records from a correctional facility, and clinics and providers in New Jersey, documenting Plaintiff's HIV positive diagnosis and treatment with anti-retroviral medications (R. 118-190). Treatment notes in 2003 and 2004, indicate complaints of and treatment for weight loss, fever, diarrhea, chills, and nausea (R. 124), as well as chest pain, cough, wheezing, blurry vision, fatigue, numbness in his hands, joint and back pain, muscle pain, and body aches (R. 127, 132-138). In June and July 2004, Plaintiff's treating physician diagnosed "deteriorated" symptomatic HIV disease; "deteriorated" neuropathy; "deteriorated" anxiety; "deteriorated" pain; and "deteriorated" depression (R. 151, 162, 177, 178). Significantly, none of this evidence is mentioned in the ALJ's decision.

The ALJ does discuss other medical evidence. At the request of the state agency, Plaintiff underwent a consultative physical examination with Lisa Zhang, M.D., on February 27, 2004 (R. 186-190). As noted in the ALJ's decision, Plaintiff reported to Dr. Zhang that he had been HIV

---

[1]His application for SSI, however, is not affected by this date.

-2-

positive since 1993;  that he experienced "fatigue all the time," pain in his back and multiple joints, insomnia, and was "very depressed because of fear of the HIV disease." (R. 14, 186).  He also reported that he had stopped using marijuana in 1985 and had stopped using cocaine in 2003. Physical examination was unremarkable; Plaintiff exhibited full range of motion and 5/5 strength in the upper and lower extremities and grip.  She gave Plaintiff a "poor" prognosis and diagnosed HIV positive, depression, and seizure by history (R. 188).

Also on February 27, 2004, Plaintiff underwent a consultative psychiatric evaluation with Joseph Lamanna, D.Ed. (R. 182-85).  Plaintiff reported sleep problems; weight loss of 15 pounds and loss of appetite; numerous depressive symptoms, including fatigue, memory and concentration deficits, psychomotor agitation; and anxiety related symptomology (irritability, hypervigilance, hyperstartle response, restlessness) (R. 182).  He acknowledged a past history of drug and alcohol abuse (R. 183, 184), and indicated that he could take care of his personal hygiene, cook and prepare food, do general cleaning, do his laundry, shop for groceries, and manage money (R. 184).  Upon mental status examination, Dr. Lamanna observed Plaintiff to exhibit "psychomotor slowing," a depressed affect, dysthymic mood, and mildly impaired memory "due to mild agitation during the interview." (R. 183, 184).  Insight and judgment were deemed "good" and he was fully oriented to person, place and time.  Assessment included: Major Depressive Disorder – severe without psychotic features; Generalized Anxiety Disorder; Alcohol abuse, Marijuana abuse and Cocaine abuse in Partial Remission (R. 185).  Dr. Lamanna gave a "guarded" prognosis due to "persistence of depressive illness and HIV infection," and opined that:

> Claimant appears able to follow and understand simple directions and instructions.
> He is able to perform simple rote tasks.  He may have difficulty maintaining attention
> and concentration.  He appears to be able to consistently perform simple tasks.  He
> appears able to learn new tasks.  He appears to be able to perform complex tasks

independently.   He appears able to make appropriate decisions.   He may have difficulty relating adequately with others.  His stress tolerance is poor.  Results of the present evaluation appear are [sic] consistent with allegations.
(R. 184-85).

The evidence also includes records dating September 2005 to September 2006, from Plaintiff's treating psychiatrist, Raju Nandimandalam, M.D. (R. 216-30).   Plaintiff reported a history of psychiatric treatment in New Jersey, but no psychiatric hospitalizations.  Diagnoses included Anxiety Disorder; Major Depressive Disorder, Recurrent; and Bipolar Disorder, and Plaintiff was medicated accordingly.   Treatment notes from October, November and December 2005, indicate that Plaintiff reported decreased anxiety, improved energy, less difficulty concentrating, diminished racing thoughts, improved sleep, decreased irritability, less fatigue, diminished feelings of sadness and worthlessness, and diminished over-activity (R. 222, 223, 225).  Treatment notes from March through June 2006, reveal that Plaintiff was depressed at times, but by July 14, 2006, he reported doing better (R. 216-20).  Diagnoses and treatment remained the same.

The ALJ also referenced a Medical Evaluation form completed by Anthony Lee, M.D., on October 4, 2006 (R.231-32).  Dr. Lee indicated that Plaintiff suffered from fatigue and back pain, hyperlipidemia, herniated disc at L4-5, and HIV (R. 231).  He gave a "fair" prognosis and specified that due to back pain from herniated disc, and HIV-related fatigue, Plaintiff could not perform substantial gainful activities (R. 231).  Included with the form are copies of laboratory results dated August 2006, and prescriptions for three illegible medications, dated September 2006 (R. 233-35).

Other relevant evidence includes a March 16, 2004 assessment from a non-examining state physician (R. 197-215).  That reviewer opined that Plaintiff was moderately limited in the ability to understand, remember and carry out detailed instructions and the ability to accept instructions and

-4-

respond appropriately to criticism from supervisors, but was not otherwise significantly limited (R. 197-99).

Plaintiff appeared at his hearing, and testified as to his pain and limitations. No vocational expert appeared or testified.

In his decision, the ALJ found that Plaintiff suffered from medically determinable, severe, non-listing level impairments of "HIV positive," affective disorder, herniated disc at L4-5, hypertension, and polysubstance abuse, but determined that Plaintiff's allegations of disabling symptoms "are not entirely credible." (R 14, 15, 17). The ALJ determined that Plaintiff had the residual functional capacity (herein "RFC") to perform light exertional work, absent his history of drug abuse. Plaintiff was also found to have mild restriction of daily activities; moderate limitations in social functioning; and moderate limitations in concentration, persistence or pace (R. 15). In reaching his conclusions, the ALJ gave "little weight" to the October 2006 assessment of Dr. Lee, who indicated that claimant could not perform substantial gainful activity; "significant weight" to "medical records of claimant's treating psychiatrist, Dr. Raju B. Nandimandalam;" and "significant weight" to the March 6, 2004 State agency psychological assessment (R. 15, 17). Applying the Medical-Vocational Guidelines (herein "the Grids"), the ALJ found that Plaintiff was not under a disability.

## STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42

U.S.C.§ 405(g).  Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir.1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### ISSUES AND ANALYSIS

Plaintiff raises several issues on review, namely:  1) whether the ALJ committed error in rejecting the opinion of Dr. Lee; 2) whether the ALJ erred in failing to obtain vocational expert testimony; and 3) whether the credibility finding is based on substantial evidence.

**Treating Physicians**

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not

-6-

inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  *See Edwards*, 937 F.2d 580 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements.)

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).  When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

Here, the ALJ noted Dr. Lee's opinion that Plaintiff has a limited ability for walking and standing and sitting and is not able to perform substantial gainful activities, due to back pain and HIV related fatigue (R. 232), but accorded it "little weight," finding that it is "inconsistent with the medical evidence of record, when considered in its entirety" (R.15).  No further explanation is offered. Plaintiff contends that the ALJ did not apply the proper standard in that he failed to explain the inconsistency, and none is apparent.

Initially, the Court rejects the Commissioner's argument that "Plaintiff provided no evidence that Dr. Lee is a treating physician." ( Doc. No. 24 at 4).  Plaintiff testified that Dr. Lee was his doctor (R. 284) and listed Dr. Lee (an Orlando physician) on the questionnaires and medication lists provided to Defendant in the earlier stages of his application (R. 114, 116-17).  In addition to the October 2006 assessment, the record includes a copy of a prescription issued to Plaintiff from Dr. Lee, as well as laboratory test results ordered by (and referencing) Dr. Lee, dated August of 2006.  Thus, the record clearly establishes that, at least as of August 2006 through February 1, 2007 (the date of the hearing), Plaintiff was under the care of Dr. Lee and, as such, he qualifies as a treating physician.

As correctly pointed out by both sides, however, even an opinion of a treating physician can be discredited, if the reasons for doing so are adequately supported.  Here, however, the ALJ did not explicitly support his conclusion that Dr. Lee's opinion was inconsistent with the medical evidence, and no implicit support is apparent.  The ALJ found that Plaintiff was HIV positive, with a herniated disc and an affective disorder, which is consistent with Dr. Lee's findings of back pain and HIV related fatigue.  Dr. Lee's opinion is also consistent with the findings of Plaintiff's New Jersey providers, who described "deteriorated" symptomatic HIV disease; "deteriorated" neuropathy; "deteriorated" anxiety; "deteriorated" pain; and "deteriorated" depression.  Indeed, the ALJ's failure to evaluate the New Jersey evidence is error, in itself.  *See Vuxta v. Cmm'r of Soc. Sec.*, 194 Fed. Appx. 874, 876-77 (11th Cir 2006) (unpublished) (Failure to explain the weight given to a medical opinion is reversible error).

The Commissioner's contention that the ALJ based this finding on selective portions of the consultative examination and the notes of the treating psychiatrist is conjecture, at best.  Moreover, the Commissioner's contention assumes that the consultative examination and psychiatrist's notes are

-8-

clearly inconsistent with Dr. Lee's opinion, a conclusion this Court does not necessarily share.  While the one time consultative physical examination was unremarkable, it did not purport to measure Plaintiff's allegations of disabling fatigue, which were noted by the examiner, and certainly not excluded by the findings regarding grip strength and range of motion.  Indeed, the consultative examiner gave Plaintiff a "poor" prognosis.  As for Plaintiff's psychiatrist, there is no evidence that this doctor was opining regarding the impact of Plaintiff's symptomatic HIV on his *physical* condition.      In order to discredit the opinions of Dr. Lee, the ALJ must explicitly set forth his rationale for doing so.  Absent this rationale, the Court cannot review whether it is supported by substantial evidence.  The ALJ's failure to explain how Dr. Lee's opinion was "inconsistent with the medical evidence" renders review impossible and remand is required.  *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir.1987) (The ALJ is required to state with particularity the weight she gives to different medical opinions and the reasons why); *see also Hill v. Barnhart*, 2007 WL 438161, 13 (N.D. Ga. 2007).

Plaintiff also contends that the ALJ erred in failing to obtain the testimony of a Vocational Expert and in failing to assess Plaintiff's credibility.  While the Court's findings on the first issue are dispositive, it addresses these issues, as well, in the interest of completeness.

The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising

-9-

from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560, *quoting Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

Where an ALJ decides not to credit a claimant's testimony about pain or other non-exertional limitations, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant court perform other work that exists in the national economy. *Foote v. Chater*, 67 F.3d 1553 (11th Cir. 1995). In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines [the aforementioned Grids]. *Foote*, 67 F.3d at 1558. Exclusive reliance on the Grids is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); *Foote*, 67 F.3d at 1559; *Heckler v.*

-10-

*Campbell*, 461 U.S. 458 (1983) (exclusive reliance on the Grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." *Walter v. Bowen*, 826 F.2d 996, 1002-3 (11th Cir. 1987). In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. *Foote*, 67 F.3d at 1559. It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. *Foote*, 67 F.3d at 1559.

Applied here, Plaintiff asserts that VE testimony was required as Plaintiff was found to have non-exertional impairments of depression (affective disorder), pain and fatigue. The Commissioner contends that the ALJ properly discredited these allegations, thus allowing exclusive reliance on the Grids.

The ALJ addressed Plaintiff's allegations of non-exertional limitations, as follows:

He testified that he has pain in his legs, left shoulder, and lower back. He is fatigued all the time, and his tolerance for stress is poor.

After considering all of the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible.

-11-

When seen by Dr. Raju B. Nandimandalam on October 7, 2005, the
claimant was doing better. His anxiety symptoms had decreased and
his energy level has improved. He was less fatigued and his feelings
of irritability had lessened. His appetite had improved. He had less
difficulty concentrating and his level of sociability seemed to be
normalizing. He denied all symptoms of withdrawal and reported no
side-effects from HIV medications.

As for the opinion evidence, I have given significant weight to the State
Agency psychological assessment, dated March 16, 2004. The
claimant was found to have only moderate limitations in understanding,
remembering, and carrying out detailed instructions and accepting
instructions and responding appropriately to criticism from supervisors.
Even though the claimant was living in a shelter he reported being able
to bathe, cook, clean, do laundry, shop, and manage money. He had
no history of psychiatric admissions and was not in psychiatric
treatment at that time (Exhibit 6F). I have also given significant weight
to the medical records of the claimant's treating physician, Dr. Raju B.
Nandimandalam (Exhibit 9F).

I have given little weight to the assessment of Dr. Lee, as it is
inconsistent with the medical evidence of record when considered in its
entirety.

(R. 17).

The ALJ applied the pain standard, finding that Plaintiff's impairments could reasonably be

expected to produce the alleged limitations, but went on to find that "the claimant's statements

concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible."

This conclusion is not based upon substantial evidence.

The ALJ articulated two reasons for discrediting the testimony:  the medical records of

Plaintiff's treating psychiatrist and reliance on the opinion of a nonexamining state agency

psychologist.  However, while both of these professionals could opine as to Plaintiff's *mental* status

and limitations, neither of these professionals purported to provide any opinion or treatment with

respect to Plaintiff's *physical* condition and related non-exertional limitations.  There is no suggestion

that Plaintiff's psychiatrist was treating Plaintiff for his symptomatic HIV or for his back pain, and

the medications he prescribed (Ambien, Xanax, Seroquel, Amitriptyline) all relate to the stated diagnoses of Anxiety Disorder, Major Depressive Disorder and Bipolar Disorder, *not* symptomatic HIV, hypertension and herniated disc (*e.g.,* R. 223).[2]   The fact that Plaintiff's mental status and impairments were improving on these medications says nothing about whether his symptomatic HIV was improving (including the related fatigue) or his back pain was lessening.

Even giving significant weight to the psychiatrist and the psychologist's opinions, these opinions speak solely to Plaintiff's mental status and are not substantial evidence of Plaintiff's physical impairments.  Indeed, it appears that the ALJ did not address Plaintiff's allegations of back pain and fatigue (due *not* to depression, but to HIV) at all.  As discussed above, the ALJ ignored the treatment notes of Plaintiff's New Jersey providers (who specifically noted "deteriorated" pain, neuropathy and symptomatic HIV) and did not provide a supportable rationale for discrediting Dr. Lee's opinion of severe limitations from back pain and HIV related fatigue.  The credibility determination is therefore not adequately supported.  Moreover, if, in fact, Plaintiff's assertions of pain and disabling fatigue are credited, the ALJ's failure to obtain VE testimony, in view of these two non-exertional impairments, was error.

### CONCLUSION

For the foregoing reasons, the Court finds that the decision of the Commissioner is not supported by substantial evidence and was not made in accordance with proper legal standards.  As such, it is **REVERSED** and the matter is **REMANDED** to the Commissioner, with instructions to: (1) properly address the opinion of Dr. Lee and reassess Plaintiff's residual functional capacity, based on *all* of the evidence of record;  then, if need be, (2) reassess Plaintiff's credibility; (3) obtain

---

[2]Although much of the treatment note is illegible, it appears that the notation of no side effects referred to these drugs, not the antiviral drugs prescribed by Dr. Lee.

vocational expert testimony regarding whether there is other work in the national economy he could

perform; and (4) issue a new decision based on substantial evidence and proper legal standards.

     **DONE** and **ORDERED** in Orlando, Florida on April 22, 2008.

                                        *David A. Baker*

                                        DAVID A. BAKER
                                        UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record

-14-